UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TAMMY JANE KAHLER,

                Plaintiff,

  v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

                Defendant.

Case No. 3:15-cv-05710-RAJ-KLS

REPORT AND RECOMMENDATION

Noted for April 29, 2016

Plaintiff has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security income (SSI) benefits. This matter has been referred to the undersigned Magistrate Judge.[1] For the reasons set forth below, the undersigned recommends the Court reverse defendant's decision to deny benefits and remand this matter for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

This matter is back in this Court after having been remanded for further administrative proceedings twice previously.[2] Plaintiff alleges she became disabled beginning November 30, 2005.[3] Following the most recent remand, at a hearing held before an Administrative Law Judge (ALJ) plaintiff appeared and testified, as did a vocational expert.[4]

---

[1] *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4).

[2] Dkt. 7, Administrative Record (AR), 855.

[3] *Id.*

[4] AR 883-904.

REPORT AND RECOMMENDATION - 1

In a written decision the ALJ determined plaintiff to be capable of performing other jobs existing in significant numbers in the national economy and therefore not disabled.[5] The Appeals Council denied plaintiff's request for review of the ALJ's decision, making it the final decision of the Commissioner, which plaintiff then appealed to this Court.[6] The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues that the ALJ's decision should be reversed and that this matter should be remanded for further administrative proceedings, because the ALJ erred in failing to properly consider the impact of her headaches and neurogenic bladder on her residual functional capacity (RFC). The undersigned agrees the ALJ erred as alleged and thus in finding plaintiff to be not disabled, and therefore recommends that the decision to deny benefits be reversed and that this matter be remanded for further administrative proceedings.

## DISCUSSION

The Commissioner's determination that a claimant is not disabled must be upheld if the "proper legal standards" have been applied, and the "substantial evidence in the record as a whole supports" that determination.[7] "A decision supported by substantial evidence nevertheless will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision."[8] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[9] The Commissioner's findings will be upheld

---

[5] AR 855-75.

[6] AR 836; 20 C.F.R. § 404.981, § 416.1481; Dkt. 1.

[7] *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991).

[8] *Carr*, 772 F.Supp. at 525 (citing *Brawner v. Sec'y of Health and Human Sers.*, 839 F.2d 432, 433 (9th Cir. 1987)).

[9] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193.

REPORT AND RECOMMENDATION - 2

"if supported by inferences reasonably drawn from the record."[10]

Substantial evidence requires the Court to determine whether the Commissioner's determination is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required."[11] "If the evidence admits of more than one rational interpretation," that decision must be upheld.[12] That is, "[w]here there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made."[13]

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled.[14] If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends.[15] If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities."[16] A claimant's RFC assessment is used at step four of the sequential disability evaluation process to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work.[17] It thus is what the claimant "can still do despite his or her limitations."[18]

A claimant's RFC is the maximum amount of work the claimant is able to perform based

---

[10] *Batson*, 359 F.3d at 1193.

[11] *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

[12] *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

[13] *Allen*, 749 F.2d at 579 (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

[14] *See* 20 C.F.R. § 416.920.

[15] *See id.*

[16] Social Security Ruling (SSR) 96-8p, 1996 WL 374184 *2.

[17] *Id.*

[18] *Id.*

REPORT AND RECOMMENDATION - 3

on all of the relevant evidence in the record.[19] However, an inability to work must result from the claimant's "physical or mental impairment(s)."[20] Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments."[21] In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence."[22]

I.      Migraine Headaches

The ALJ in this case found plaintiff had the RFC:

> **to perform light work . . . except [she] can stand and/or walk no more than 2 hours in an eight-hour workday. [She] has no specific limitations on sitting. [She] can occasionally kneel, crouch and climb ramps and stairs. She cannot crawl or climb ladders, ropes or scaffolds. She should have ready access to a restroom in the workplace. [She] can have no concentrated exposure to extreme heat, and she should not be required to have more than brief or infrequent exposure to work on computers. She can sustain concentration, persistence and pace for simple, routine and repetitive work. She can occasionally perform more complex work, but she could not sustain work of a complex nature.**[23]

In so finding, the ALJ stated in the context of evaluating the impact of plaintiff's headaches on her ability to function, that he limited plaintiff's standing and walking to two hours in an eight-hour workday, because doing so "creates work that is less taxing and demanding."[24] In the same context, the ALJ stated he restricted plaintiff to unskilled work, because such work "requires less attention and concentration and thus would be easier to perform even were [she] experiencing

---

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.* at *7.

[23] AR 861 (emphasis in original).

[24] AR 866.

REPORT AND RECOMMENDATION - 4

some headache symptoms."[25]

The undersigned agrees with plaintiff that the ALJ failed to give a logical explanation for how he came to these conclusions. The ALJ found "[t]he objective evidence shows [plaintiff's] headache pain waxing and waning over time with at least some symptom amelioration with medication and other treatment," with recent treatment notes suggesting "improved headache control without medication side effects."[26] But as plaintiff points out, the frequency and severity of her headaches never stopped completely for any significant length of time.[27] And while the record does indicate some recent improvement without side effects, it also shows at the same time problems she had keeping up with prescribed treatment due to insurance or health-related issues, resulting in an increase in headache frequency.[28] Indeed, although the ALJ points to some instances of treatment noncompliance for perhaps *possible* suspect reasons, the record overall again reveals issues of insurance coverage, side effects and other health-related reasons for why plaintiff did not always follow prescribed treatment.[29]

Because an ALJ may not discount a claimant's credibility on the basis of noncompliance when the claimant "has a good reason for not" complying with recommended treatment, such as inability to afford it, the ALJ erred in discounting the functional impact of plaintiff's headaches on this basis.[30] But even with those instances of noncompliance the ALJ notes, that happened for reasons other than those noted above, the record does not clearly show they necessarily occurred

---

[25] *Id.*

[26] AR 865.

[27] AR 334-38, 340, 343, 378, 391, 405, 430, 445, 465-66, 469, 472, 480, 484-85, 711, 713, 715, 717, 726, 741, 743-44, 766-67, 769, 1089-90, 1171, 1218, 1239-40, 1265-66, 1322-23, 1327, 1333, 1339-40.

[28] AR 340, 405, 430, 445, 713, 717, 1089-90, 1171, 1265, 1322-23.

[29] AR 865; *see also* AR 340, 405, 430, 445, 713, 717, 1089-90, 1171, 1265, 1322-23.

[30] *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995); 20 C.F.R. § 404.1530(c)(4), § 416.930(c)(4); SSR 96-7p, 1996 WL 374186, at *7.

REPORT AND RECOMMENDATION - 5

for improper reasons. For example, in one such instance plaintiff reported "being booked up with commitments for her children such that she could not attend a medical appointment."[31] But given that plaintiff is a single mother, and has one child who herself is disabled, this very well could be a reasonable decision on plaintiff's part. Further, it does not appear that the appointment plaintiff did not attend was for her headaches.[32]

The ALJ also points to plaintiff's failure to increase her exercise levels and lose weight.[33] While the record does show such lifestyle changes were recommended at least in part in order to help alleviate her headaches, it is not at all clear why plaintiff failed to increase her exercise levels or lose weight, or that even if she had done so that this would have resulted in substantial improvement in her headaches.[34] Nor does the record support the ALJ's finding that plaintiff "lives a busy, active life as a full-time mother and caregiver of a teenager and a disabled school age daughter," as a basis for further discounting her credibility.[35] Although credibility may be discounted if the claimant is able to spend a substantial part the day performing activities that are transferable to a work setting or those activities otherwise contradict the claimant's testimony,[36] such is not the case here. Rather, the record shows plaintiff is far more limited in her activities and gets significant help from others in performing them.[37]

Even if the ALJ is correct that the record shows plaintiff has seen some improvement in her headache severity and frequency, he still failed to explain how he arrived at the conclusion

---

[31] AR 865, 1098.
[32] AR 1098.
[33] AR 865.
[34] AR 445, 469, 709, 1177-80.
[35] AR 866.
[36] *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996).
[37] AR 42-44, 141-45, 148-53, 156, 181, 195, 796-801, 899.

REPORT AND RECOMMENDATION - 6

that limiting plaintiff to unskilled work and two hours standing/walking adequately accounts for her impairment-related symptoms. That is, it is not at all clear how the ALJ determined that *those* particular limitations were appropriate, especially given that the record is devoid of any medical source opinion as to the functional impact of plaintiff's headaches.

Although it is the duty of the ALJ to resolve ambiguities and conflicts in the medical evidence, an ALJ may not base his or her decision on "his own expertise," and should avoid commenting on the meaning of objective medical findings without supporting medical expert testimony.[38] This is what the ALJ appears to have done here in assessing plaintiff's RFC, and accordingly he erred. On the other hand, because as the ALJ points out the record does contain medical evidence that exposure to heat and use of the computer tend to be triggers for plaintiff's headaches, the restriction to no concentrated exposure to extreme heat and no more than brief or infrequent work on computers was not improper.[39]

II.    Neurogenic Bladder

As noted above, the ALJ found plaintiff should have ready access to a restroom in the workplace. In so finding, the ALJ stated that he considered plaintiff's bladder problem, "the benefit [she] received from self-catheterization, and the time and frequency of this treatment," but determined that plaintiff "should be able to do this during breaks or lunchtime while working."[40] The ALJ based this determination on plaintiff's "initial testimony indicat[ing] she would need to do the catheterization about twice during a workday."[41] The ALJ acknowledged plaintiff later testified that she was "self-catheterizing more frequently," but found "the medical

---

[38] *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998), *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982); *Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982); *Gober v. Mathews*, 574 F.2d 772, 777 (3rd Cir. 1978).
[39] AR 866, 1171.
[40] AR 868.
[41] *Id.*

REPORT AND RECOMMENDATION - 7

evidence [in the] record does not indicate increased neurogenic bladder issues."[42]

As plaintiff notes, however, the record does indicate increased neurogenic bladder issues. For example, an early July 2009 treatment note from Bryan Smith, M.D., reported that plaintiff "started on intermittent catheterization about 2 years ago," and that she was self-catheterizing "4 times per day" currently.[43] However, cystoscopy showed "neurogenic and chronic inflammatory changes," and Dr. Smith "recommended intermittent catheterization more frequently to decrease bladder volumes."[44] The ALJ's stated basis for rejecting plaintiff's later testimony, therefore, is without a reasonable basis in the record.

III.  Remand for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits."[45] Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."[46] Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate."[47]

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose."[48] Specifically, benefits should be awarded where:

---

[42] *Id.*

[43] AR 728.

[44] AR 729.

[45] *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).

[46] *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).

[47] *Id.*

[48] *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001).

REPORT AND RECOMMENDATION - 8

(1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.[49]

Because issues remain regarding the impact of plaintiff's headaches and neurogenic bladder on her RFC, and thus her ability to perform other jobs existing in significant numbers in the national economy,[50] remand for further consideration of those issues is warranted.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends that the Court find the ALJ improperly concluded plaintiff was not disabled, and that it reverse defendant's decision to deny benefits and remand this matter for further administrative proceedings in accordance with the findings herein.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto.[51] Failure to file objections will result in a waiver of those objections for purposes of appeal.[52] Accommodating the above time limit, the Clerk shall set this matter for consideration on **April 29, 2016**, as noted in the caption.

DATED this 13th day of April, 2016.

Karen L. Strombom
United States Magistrate Judge

---

[49] *Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

[50] AR 873-74.

[51] 28 U.S.C. § 636(b)(1); Federal Rule of Civil Procedure (Fed. R. Civ. P.) 72(b); *see also* Fed. R. Civ. P. 6.

[52] *Thomas v. Arn*, 474 U.S. 140 (1985).

REPORT AND RECOMMENDATION - 9